Good morning, your honors. Jack Pirizzolo on behalf of the appellant, Mr. Das, and with me at council table are Dan Feith and Cody Aikens, also on behalf of Mr. Das. If I may, could I reserve three minutes for rebuttal? You may. Thank you. I'm going to focus my comments on the limited time that I have today, subject to any questions the court may have, of course, to counts one and two, count three, and sentencing. So obviously any questions you have about counts five and six, I'm happy to answer, but I don't intend to address them unless you have questions. So with regard to counts one and two, essentially the government in this briefing does not dispute that there are constitutional issues that exist when a charge bundles discrete acts, any one of which is a crime. And here it's undisputed that three of the transactions at issue in the count of counts one and two were each independently the basis for the charged conduct. This case is indistinguishable from Newell. The reality is that despite its attempts to draw distinctions between the statute at issue in Newell and the statute at issue here, those distinctions don't exist, and I'll go through them. So the government claims that the plain text of the statute here means the unit of prosecution is different than it was in Newell because of the plain text of the statute says there's aggregation, that there was activity during a one-year period, and that the language has $25,000 or more. But in Newell, all three of those things the court addressed. There was aggregation in Newell. There was a during a one-year period in Newell. And the $25,000 or more is indistinguishable from the $5,000 or more in Newell. There is no difference between this case, no meaningful difference from this case from Newell. And under those circumstances, the specific unanimity instruction should have been given. It was clearly preserved. It was requested, and it wasn't given. And on that ground alone, there needs to be a remand on counts one and two.  Counsel, there's a for me, this is a difficult body of law, this whole issue of when is a unanimity instruction required. There's a lot of it seems to me somewhat loose language in the cases, talks about means of committing a crime, ways of committing a crime, what's an element, what's not. But it seems to me there is a broad consensus that a jury has to agree unanimously on the conduct, the conduct that underlies the criminal conviction. And I gather it's your position here that given the way these indictments were brought, there are three instances of conduct at issue in the various charges that are brought. So it's your position that in the absence of a unanimity instruction, there's no way of knowing whether the jury focused on the conduct that underlies the $25,000 contribution or another $25,000 contribution or a $50,000 contribution. Is that the essence of your argument? It is, because it starts to implicate the constitutional concerns about both Fifth and Sixth Amendment. I would emphasize here the Sixth Amendment. And it's the insight that I think Newell had when he said, look, at some level, we are getting into the area where we are going to be violating the Constitution if we permit the government to charge the conduct in the way it charged it. And remember, the government is in charge of how it charges the case. It had two additional options here. It could have charged it differently, three separate counts, or agreed to a specific unanimity instruction, which they didn't agree to. And there are all reasons I can explain to you as to why they might not want to do that. But none of them really are permissible. Does it matter here that this sort of feels like one scheme of conduct in that the contributions were all made close in time, I think a day or two apart? They seem to have been coordinated. Does that militate at all against the unanimity instruction here? I don't think so because of the way it was charged here. You could see it was charged in the conjunctive, in the indictment, if you look at that. So the way they charged it, and as everyone in the criminal world knows, and means war in an indictment. And so they charged it in the conjunctive. And you can see that the way they set it up, it was three separate and discreet instances. And that's the way it was argued to the jury, and that's the way it was instructed. So while it might be that you would say, okay, hey, maybe this was charged as a scheme, that's why the Cotto case that the government cites, if you look at that, that actually helps us because that was charged as an overall stream case. That's how it was charged. That is not how it was charged here, and it's not how it was charged, argued or instructed to the jury. It was specifically argued that you should think about these things as three separate transactions. That's how they argued it to the jury. And so, yes, there might be a world in which, potentially, there would be a stream if it were charged or conceptualized that way, but that's not how it was charged here. You want to argue that count three is dependent on one and two standards? Yes. So there's a harmlessness error. I don't believe the government comes even close to meeting a harmless error beyond a reason. They're arguing on counts one and two, the harmless error. I just want to make sure that I don't sit down here without addressing that if you have questions about harmless error. No, you should please respond to Judge Kayada's question about count three, but I do want to discuss harmless error with you before you sit down. So I do want to get back to  you. So as to count three, I apologize, Your Honor. So your question is, as to count three? Yes, I'm having difficulty understanding why count three depends on one and two being deemed to be crimes. So I'm not sure I understand the question. You don't understand how... Count three refers to the withdrawal of the money. Yes, Your Honor. Why do we care how the money got in and whether it was lawful other than the loan theory? Because if it was his own money, he can take it out, as to count three. But he took out far more than... Didn't he take out like $300,000? Yes, he took out $300,000. So counts one and two only add up to, what, $75,000 or something? Counts one and two are $125,000, Your Honor. So there's a big gap there of $100,000 plus that he removed. Are you addressing whether there's a spillover effect on count three? The spillover effect with regard to count three that we argue has to do with essentially the question of whether or not the jury would have just essentially just not considered really the conversion. Our primary argument on count three is that it's not a crime. It's simply not a crime. Well, in that argument, if we look at the indictment, it seems to me your theory is that that indictment, even if it's completely true, is not a crime for count three. Correct. So that could have been raised in a Rule 12 motion. You could have said, the indictment isn't indicting me for a crime. It could have been raised in a Rule 12 motion, yes. That's correct. And it wasn't. So normally it would be waived, that argument. But as I understand you, Mr. Briefe, you want to say, well, because it wasn't a crime, the evidence wasn't sufficient to prove a crime. Correct. That could be true in every Rule 12 situation. Well, Rule 29, where it's a sufficiency, is an exception to Rule 12. So Rule 29 permits But wouldn't that apply in every Rule 12 situation, that exception? Not necessarily. For example, if there had been a question, so under Rule 12, there's multiplicity, duplicity, other types of arguments that are covered by Rule 12 that might not necessarily be. No, but how about a Rule 12 argument that I'm not indicted for a crime? As I understand your argument, the defendant would have an option to either move to dismiss the indictment for failure to allege a crime, or let the trial go forward and then said, all the evidence proved was what was in the indictment and that's not a crime, so therefore it's not sufficient to prove a crime. Well, that's where the Daniels case and the Morrison case permit that. So where, under the Daniels case, the pure statutory interpretation issue was deemed to be a sufficiency issue under that case law. So it permits it. It permits it. And I guess what I'm trying to get at is, wouldn't that follow in every situation where it was contended that the indictment did not allege a crime? Potentially. I don't know that I'd be able to agree that it would sweep so broadly. I can't think of an instance where it wouldn't, and you might think of one later, but it seems to me it would swallow up quite a bit of Rule 12. With regard just to the statement of whether or not you've stated an offense on that issue. That's the only part that it would. Actually not really a big part of Rule 12, and also our position is that this can be reviewed for plain error, that it is plain error under Romano, and that the Rule 12 case law that the government relies on is inconsistent with prior circuit precedent, SOTO, and is also wrong. The Cardona and Walker cases are not correct interpretations of Rule 12 in our view, and they departed from a Walker preceded SOTO, but Cardona and its progeny departed from this Court's decision in SOTO that says it's not waived if it's plain error. You can review for plain error. Could we turn back to, say we agree with you on the unanimity instruction, why isn't this a case? The question of harmlessness, there were three different transactions. The first transaction is Bose, which the government concedes is that there's no basis to say that the error with regard to Bose was harmless beyond a reasonable doubt. That leaves two of the transactions. One is Shaw. The question was, what was the evidence that people understood on both sides of the transaction that this was either a conduit contribution or an actual excessive contribution? Shaw testified under immunity, so he's immediately, there's a question as to issues of credibility, but he also testified multiple times that he testified it was a personal loan and that Dost asked for a personal loan. Personal loans are fine under the statute, and I'll just give you a couple of references. So Dost asked for a loan, if you look at Joint Appendix 1076 to 1077, 1074 to 1075, and 1072. Also, the government relies with regard to Shaw on this email regarding engineering. If you look at the actual testimony on the email where there's a discussion of engineering, which the government says, well, that alone shows that it was beyond a reasonable doubt. Shaw's testimony about the comment on engineering was, what did you understand Mr. Dost to mean when he indicated that he wanted to get a certain target, even if it involved some engineering? He said, I guess my impression at the time, engineering was anything that didn't involve direct contributions to the website. He testified that he thought that was a benign term. So the text that they were relying on, the actual testimony about it, was that it was non-incriminating with regard to Mr. Dost, and there was no testimony at all, no evidence that Mr. Dost understood or acknowledged himself that this was going to be a contribution. That was Shaw. Chowdhury? Counsel, I'm looking at page 33 of the government's brief, and they are quoting Dost. He's in communication with Chowdhury, and Dost is responding, I gather, in an email to Chowdhury's willingness to transfer funds, and Dost says, thank you for doing it. I will aggregate and send as one batch. Total cell fund will be close to $250,000K plus likely $100K plus raise. I mean, there you have the defendant saying that he's going to take these, I guess, these three loans, if you will. He's then going to aggregate them and send as one batch, I guess, to his campaign fund in order to reach this $250K. I mean, I realize there's a lot of other evidence, but in light of a statement like that, isn't there considerable force to the government's argument that a jury, even if not given a unanimity instruction, would have taken the view that every one of these transactions individually was violative of the campaign finance law? I mean, he's saying there that I'm going to treat them all the same. I'm going to batch them, and I'm going to send them into my campaign fund. I mean, why isn't that a forceful argument that even in the absence of unanimity instruction, the jury would have necessarily taken the view that each one of these was violative of the campaign finance law? I have a couple of responses to that. First of all, the government's conceded that as to Bose, it does not. It does not satisfy it. Okay, so to each one, now we're talking about Shaw and Chowdhury. Shaw's testimony was quite clear that he was treating it as a personal loan. And remember, the fact that it's a personal loan is legal. That is fine. If somebody loans to the candidate money that's personal, and that frees up money for the candidate to then use that freed up money to fund the campaign, that's fine. That's why the point of the scare quotes around the cell phone is in a way so misleading here. That is not incriminating in the sense that the government wants to say is beyond a reasonable doubt. The cell fund is, there were two components here. You can see in the brief at 33, there's 200 and K plus 100 and K. The 100 and K is referring to ordinary contributions. That's what it's referring to. The cell fund is just referring to money that's coming from DAS. That's totally fine so long as it's a personal loan, originally a personal loan. So the dispute, the question the jury has to resolve beyond a reasonable doubt is that as to Chowdhury and Shaw, those monies were intended to be and DAS understood them to be actual contributions to the campaign. The scare quotes that they rely on don't do that. They don't do that. All they do is they say this is going to be money that's going to be part of what I'm self-funding from my own personal assets. That's what that language provides. FECA, it permits these personal loans. There's no question it's allowed. And so also if you look at the full exchange, which is not quoted in the brief, and you look at JA1841, you're going to see that there's a discussion about these being loans. And Chowdhury went to the government and told them that these were personal business loans twice. So the part that you are focusing on relates to Chowdhury. Chowdhury is a compromised witness because he told the government twice that these were loans. He's then threatened with prosecution and changes his story. So when you're talking about harmlessness beyond a reasonable doubt, you're talking about situations where it's found, you're found like the defendant is on a recording and says I did it. That's the type of thing that's harmless beyond a reasonable doubt. Here, it's not going to be harmless beyond a reasonable doubt because the text that you're looking at is amenable to multiple different interpretations based on context. I'm conscious that you're... I'm way over. I apologize. Yes. I have one more question for you, though, on the computation of the guidelines. Yes. What is your view of the 147,000, I think? Yes. Where did that come from? Yes. So that came up from a condo. And I think, I apologize, I think our briefs didn't do a great job of walking through the transactions. So if you just give me one additional minute, I can just give you the record site so you can do the math yourself. And just to be clear, this is a math error. This is definitely clear error because you just run the math, you're going to see. And I'll give you the citations for the 147. And I do want to add something, one point, on the Bose $25,000, which will make a difference in sentencing. I was surprised to see the government even argue that that was properly included because in their post-trial, it didn't make sense given the way they presented the whole case, but it also, in their post-trial motion hearing, they conceded. They say, we do concede. And this is a fair point that the $25,000 that Mr. Bose gave is not part of the equation when talking about the conversion. So they've already conceded that $25,000 is out. I'm sort of surprised that they're briefing it and saying it's still in. Here's the math on the condo. Okay. There's $192,445 in condo proceeds. That's a JA-1905 in the joint appendix. If you look at JA-1171, 1170 to 1172, you'll see that the FBI says that it's a condo sale. The forensic accountant at 1228 confirms the same, says that's from a condo. 147,000 of those proceeds go into the account, and there are three steps to it. So first, $48,000. Look at JA-1905, and you'll see a transfer. Then look at JA-1906, and those two documents you'll see in the record are basically the transactions in and out of the two key bank accounts, and they track. And then you'll see in the testimony, JA-1032, the FBI agent said what actually funded the $48,000 transfer. A review of the financial analysis indicates the condo sale proceeds funded that. So that's at 1032. So that's the $48,000. $45,000 is the next part, and that's also at JA-1905 and JA-1906. You can see the transfers. And then the FBI agent at 1032 testified that she said $50,000. So basically it turns out to be $45,000 because there's a transfer of $50,000, but only $45,000 ends up in the account. She testifies that $50,000 of, there's like $170,000 that goes in as a transfer, and so does the forensic account. At JA-1158, it says the additional $50,000 was a transfer from DAS's parents' savings account. So that's, okay. $54,000, that's the third component of 147. Again, look at JA-1906. There's a $50,000 transfer from the parents into the joint account. And remember, it's a joint account, so it's Mr. DAS's money. And then you can see there's a $54,010 bank check to DAS for Congress. The $10 is the wire fee. So that's the $54,000 that goes in. That's $147,000 he's entitled to. All that, that's his money. There's no question that that should not have been considered in the loss amount. Thank you. Thank you, Counsel. At this time, would Counsel for the Government please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court. Dave Lieberman for the United States. I'll start with Counts 1 and 2, and maybe just start where the discussion picked off sort of backwards and start with harmless error. That even assuming there was an error in failing to give the instruction, it was harmless. We read, they were text messages and emails between Mr. DAS, Mr. Chaudhuri, and there's a fact campaign. Do you concede that the Voss transfers are not harmless? So we are not arguing harmless error beyond a reasonable doubt with respect to Bose because he got up and testified that he understood this to be unconnected to the campaign. We think there was powerful evidence for which the jury could have rejected it, but for purposes of this harmless error standard, we're taking him out of the equation. So the email message, excuse me, the text messages that Judge Lopez read to opposing counsel talking about I will aggregate and send as one batch. Total self-fund will be close to 250 plus 100K raised. That to our mind is clearly talking about campaign contributions. I think it's also important to look at the text messages immediately before that, and we've reprinted them on pages 7 and 8 of our brief. The opening text from DAS is we are short. We'll struggle to hit the high 300s. DAS continues to Mr. Chaudhuri, did you get my wire transfer information? Jay and my parents have funded, and that's Shaw. Shaw and my parents have funded. I'm planning to do the main transfer on Friday. Will you be okay to fund? That will help us bring us over the finish line. That to our eye is again powerful evidence that they're talking about money into the campaign. This alternative defense or the defense they presented that this money was coming in as personal loans that was just freeing up money for DAS to make loans from his own money to the campaigns, to his campaign. The evidence addressed that as well. The forensic accountant walked through the banking records and the summaries are in this court's appendix 1905 and 1906. And the court will see that first these transfers from Mr. Shaw and Mr. Chaudhuri went into the parents account. They then go straight into the joint DAS account, and then they go into the campaign fund within a matter of a day or two. The court will also see and the forensic accountant testified to this, that the money in the account at the time these transfers were coming in was quite low. It was several thousand dollars. So there was not other money in these accounts that could be cast as a personal loan by DAS to the campaign. So we view this with respect to Mr. Shaw's transfer and respect to Mr. Chaudhuri's transfers. We view it as damning evidence from the text messages. And again, the Shaw email, he says it's a personal loan, but the full quote is we are each making a $50,000 loan to DAS to loan his campaign. So considering all of the evidence collectively, it is clear that DAS had solicited money in the form of loans from these individuals to funnel into his campaign. So suppose a congressional candidate walks into a bank and says I want to borrow $300,000. I'm going to mortgage my house. And the bank says what are you going to do with the money? And the candidate says, well that's going to free up this other asset that I have that I can then loan to my campaign. Is that a violation? So these are factual questions. I think that would be a harder case for the government to prove to the jury. How is this different than a person giving money to DAS that DAS then turns around and gives to his campaign? Unless it's got a label, it's hard to tell whether it's a loan to DAS that he's going to loan to the campaign or it's a campaign contribution he's giving to DAS so that DAS can pass it on to the campaign. So it's a factual question, which will come into what Mr. DAS intended to solicit as well as what the contributor understood. And the evidence here is overwhelming that this is all campaign. But wasn't there a reference, at least one reference to it as a loan? Yes, but a loan to send the campaign is still, and I think we pointed this out in our brief, still qualifies as a contribution under federal law. But who was the check made out to? So in this scenario, so these were wire transfers. But wasn't the wire transfer to a personal account? To the parent's account. Right. So that doesn't look on its face like a campaign contribution. Well, considering all of the, even if there was not a memo line that says campaign contribution, all of the evidence that is in this record shows that DAS solicited and that these two gentlemen intended to get this money to the campaign and that is a contribution. If I could just briefly step back to the first step, because we don't think there was any problem in how we charge counts one and two in this case. And we don't think that Newell controls. But I guess the problem isn't in the charging. I think the defense agreed it's properly charged this way. I think they also said you could probably charge it as three different counts as well. It's in the unanimity. It goes to the unit of prosecution. We don't think that there's a unit of prosecution issue. That there was one unit of prosecution charged and proven at trial based on the plain language of the statute, which refers to a violation aggregating $25,000 or more during a calendar year. Now, I take the point that this court has interpreted section 666 to allow aggregation up to the threshold .5 thousand dollars for section 666 in that there's a jurisdictional element in there that refers to whether the victim received federal funds during the calendar year. The text that this court was looking at in Newell was simply what is the unit of prosecution for embezzled property valued at $5,000 or more. And then this court teased out a per transaction unit of prosecution. The unit of prosecution here, we have explicit text saying from Congress, aggregate. Individual contributions aggregate. Singles into a whole. And we have this long temporal sweep contrary to the language of the statute in Newell. Let me make sure I understand the implications of your argument. Candidate A on January 2nd takes in $25,000 in an illegal contribution. Candidate B on January 2nd takes in $25,000. In June takes in $25,000 from another person. And in October takes in $25,000 from a third person. As I understand your argument, both candidates would be subject to only one criminal conviction. Yes. That is our understanding because of that year-long temporal focus in aggregating $25,000 or more during that calendar year. We view $25,000 as a floor and anything above that is the same. So once you hit the $25,000, you've got freedom from criminal prosecution for whatever. You could bring in $25 million and you wouldn't have another crime. To our view, that would go into sentencing. But yes, that is our view. The defense view, as I understand it, is you can aggregate up to $25,000 to reach the $25,000 threshold. But once you hit the $25,000 and there's no aggregation, it's now multiple units of prosecution. So you only aggregate below the threshold and not above the threshold. I don't think you can square that with the statutory text, which says aggregating $25,000 or more, which defines the offense as either aggregating $25,000 or the unit of prosecution as aggregating more than $25,000. Counselor, I mean, and this is the concept that seemed to be at work in Newell. You have these, I guess we're focusing on two transactions. Each one of which is at the amount specified in the statute. Each one of those separately constitutes a complete crime under the statute. So you could have jurors hearing the evidence who would think that, yeah, with respect to that one, no, six jurors could say, yeah, I think that one transaction violated the statute. Six other jurors could say the other one did. And in that fashion, you would not have 12 jurors agreeing on what the conduct was that violated the statute. You would have, with respect to each transaction, you would not have the required 12 jurors agreeing that this was the conduct that violated the statute. I mean, isn't that a plausible scenario given the way the indictment was set forth? And doesn't that violate the constitutional prohibition against a conviction by less than 12 jurors? No, Your Honor, because the element here is, in this case, it was excessive contributions, $25,000 or more. Conduit contributions, $25,000 or more. The three different contributors here, or the transfers, are evidence that the government transfer, or which bucket of evidence it finds most persuasive, it just has to find evidence beyond a reasonable doubt that shows that DAS accepted contributions aggregating $25,000 or more in excess of SEC limits. So the fact that half jurors could find the evidence in bucket A meeting that element, or half the jurors could find the evidence from bucket B meeting that element, we don't think presents a problem. So you're really saying, in the hypothetical I gave, that the government could not bring a three-count indictment against candidate B for the three separate violations. Each transaction was clearly a violation of the statute and your position is the government could only bring one count? Yes, that's based on the temporal nature because it's looking at, in your hypothetical, the candidate's conduct as a whole over the course of a calendar year. So a candidate that accepts $25,000 and a candidate who accepts two or three checks of $25,000, the statute treats them the same because it's $25,000 or more. Why shouldn't we read the reference to aggregation as simply meaning that you can't get around the $25,000 by breaking it up into $10,000 and $16,000 contributions on two different days? I think it's because we read it as aggregating $25,000 or more, which means aggregation applies both to the $25,000 or more. Was it Newell an aggregation case? What's the difference? Newell noted this court's prior decision in Sanderson which interpreted property valued at $5,000 or more and said the government can aggregate up to, we interpret that language to the government valued at $5,000 or more, the government can aggregate up to the $5,000. But there's no language in Section 666 comparable to the explicit language that we have here. The court reached that based on its view of the statutory text there, which, of course, Newell said Section 666 language was pretty opaque and it was doing the best it can based on some analogies to other statutes. If we disagree on your reading of the text of the statute, is there anything else you would direct us to that guides that interpretation? Well, we pointed out in Lopez-Cotto, and I think we argued it, I think the indictment charged it this way, that these were not three disparate transactions. They were all part, this is at indictment, paragraph 26, a scheme by DAS to obtain personal loans from close friends in December of 2017 to avoid FEC limits. But did this go to the jury as a conspiracy count? It did not. So what's your point then? My point is that, at least as we are reading this line of cases, that it is, I'm sorry, I've lost my train of thought, that the way that this was argued is that these were all of a piece. The jury could find any one of them, but it doesn't sort of rise to the level, I think, of what Judge Lopez was concerned about, which is that each individual transaction somehow becomes an element of the case. Judge Kadd, I think you also asked about harmless error with respect to the spillover of counts 1 and 2 spilling over to count 3. We don't think that there's a harmless error problem there for the reason that I think one of your questions was posited. Let's assume a scenario where all the contributions... It wasn't so much harmless error. I did not quite understand how count 3 was dependent on a finding that there was any violation under count 1. So a spillover, like a spillover concern. We agree, or we share that view, or we share that position in that Assume everything, all the dollars into the account that were charged in counts 1 and 2. Completely fine. No excessive contributions, no conduit contributions. The jury still had powerful evidence that Mr. Das took them out for personal use. To the defense that these were just personal loans that Das gave to the district court's jury instructions on count 3 expressly addressed that. 1416 and 1417 of the joint appendix. The district court instructed on count 3 a candidate's repayment of his own loan is not conversion. So the concern of the spillover or taint concern that Mr. Das has is not present in light of those jury instructions. Now I'm about out of time. Can I briefly address the remaining issues? So on count 2, we view this as falling under this line of cases where appellate review is foreclosed. This should have been raised as a Rule 12 motion. It was not. Mr. Das has not articulated good cause for failing to raise it at that time. Opposing counsel has mentioned Soto. We view Soto as an example where this court exercised its discretion to review a claim brought by a pro se criminal defendant who had otherwise filed an untimely motion to dismiss. But he filed his motion to dismiss on double jeopardy grounds just late in the district court. The district court addressed it. This court always has discretion under its case law to excuse a Rule 12 defect and it did there. We don't have that here. The claim here was never filed in district court. On the Daniels case, that was a case where the defendant argued that the government's evidence adduced at trial was insufficient because our evidence did not meet the legal definition of indictment under the federal statute there. The attack here, or the claim here, has nothing to do with anything that the government presented at trial. It is simply that count three did not allege a federal criminal offense. Can I circle back to the question I just asked, back to reading the text and what aggregate means? Yes. And I take, I understand your point about a scheme which wasn't charged here, but I do understand that. But this case is different. Is there anything else aside from the text that you would direct us to that suggests your interpretation of aggregate is the right one here? So the one that we pointed to in the brief was the Bell case from the Supreme Court on unit of prosecutions and the rule of lenity. It's a corollary of the rule of lenity. When there's a dispute about what is the unit of prosecution of a particular criminal statute, Bell instructs courts to say, construe the statute narrowly to favor one unit of prosecution, not multiple unit of prosecutions. So to the extent I know Judge Lopez, you said that this unit of prosecution area is hard. I would agree to the extent that there is a debate about this, the rule of lenity would counsel in favor of construing 3109 as establishing a single unit of prosecution. You know, there's still four weeks left in December, but this is the only time I've heard this year, the government argued for the rule of lenity. This is the first time in my career that I have discussed the rule of lenity, but it, but I think that notes the awkward posture or of this case. Counsel. Yes. You said in your brief that no court has previously adopted your argument with respect to the involves language of the criminal liability statute. You rely on that involve, the word involves to support your position that the personal conversion that you say occurred here falls within the criminal liability statute. Again, you make that point with respect to it could not, given that no court has adopted your position, it could not be plain error for the court to apply the criminal liability statute to the personal conversion. Is that correct? Is that your understanding is that no court has actually grappled with the precise claim raised here is an example or illustrates why under prong to the error asserted here was not clear or obvious. Okay. I know I'm well over time. I'll happily rest on my briefs on everything else. I'll briefly just try to hit a couple points on the sentencing with your honor's indulgence. Very briefly. In terms of the $147,000, we think the record shows that this money all tracked back not to Doss's account, but to the parent's account. The court can follow the tracing on joint appendix 1905 and 1906. We also have the text messages that I read earlier where Doss is saying my parents and Mr. Shaw have funded. This is all evidence that the money is not Doss's money. This is evidence, particularly on sentencing where it's a preponderance, all evidence favoring the government's view that the $147,000 came from the parents and therefore it's into the campaign account and cannot be unlawfully converted. On the $25,000 from Bose, I'll get the citation from opposing counsel and just make sure he said that my position is inconsistent with what we told the district court. I'll get the citation from him. We'll look it up and follow up with the court if that is satisfactory. I will beg the court's indulgence. I'm leaving the country tonight and I will not have access to my work email, so it may be a little late. For all the reasons we'd ask that the court affirm. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a three minute rebuttal. Thank you, Jack Pirozzolo, for Appellant Doss. I'll try to be very brief. First, I want to address the count three question, Judge Ciotta, that you asked me about the math as to why it still isn't an offense on the spillover argument that we're making. If you could look at page 40 after this on our brief, we have a table that shows why there's a spillover. And when you include the amounts that were Doss's money, the actual amount makes a huge difference in fact whether there is a crime because the delta, as we explained on page 40, is less than $25,000. So you can just look at what we have in our brief and that's why the spillover does affect count three. Second, with regard to harmless error, I have a couple of things that I want to address. First, quickly, Shaw, the government's theory at trial, and this goes to both Chowdhury and Shaw, was that Doss's scheme, the text messages that you referenced, Judge Lopez, was that the idea was that there was a plausible deniability scheme. That was the basic theory was that Doss was setting this up so he could have plausible deniability. Shaw was specifically asked about that and about Chowdhury's testimony regarding that, and he said that that never happened, that there was never any discussion about plausible deniability. So that alone with regard to that whole exchange creates reasonable doubt or certainly does not show that it's harmless beyond a reasonable doubt. With regard to Chowdhury's loans, I just would direct the Court's attention to J.A. 1931 and 1932. You'll see extensive email communication from Mr. Chowdhury to Mr. Doss saying that the mother owes the money back. He is treating it as a personal loan that he gave to the mother, and there's an extensive email exchange about that. And also I'll point the Court to J.A. 2001. You'll see that the Doss parents had ample assets to fund the campaign. That's at 2001. With regard to the Rule 12 question that I was asked, this is not going to be a major exception. I took, Judge Kayade, your question that there might be some tactical advantage that a defense lawyer might have and sort of lay in wait. Certainly we're talking about if there is an argument that it's not an offense, that it's not an offense, if they see the issue, no defense attorney is going to lie in wait on the question and wait for plain error review on appeal in the hope that there's plain error review down the line and win on that basis. This is an issue that was missed by the attorney. It's a forfeiture issue. It is not a waiver issue. That's the whole point of the amendments in Rule 12. It's a forfeiture issue. And the situation we have here is you may agree with me that it's not a crime. You may agree with me, but you're going to say we're going to send this guy to jail even though we agree with you that it is not a crime. And that's what Romano's insight in the plain error was that it's actual innocence where the statute is not a crime. So you acknowledge that with respect to this count three issue that plain error is not a crime. Do you acknowledge that? No. Our position is that the sufficiency, so the question I was asked was that the sufficiency argument believes a gaping hole in Rule 12. And it does not because it's not a situation where somebody's going to lie in wait for the sufficiency argument. That's the point I was making. We believe it's preserved, but we also believe it's clear. But you just said counsel missed. Were you talking about Rule 12? When you said counsel missed it, what did you mean? As I understood what I was being asked is that if Rule 12, if the trial counsel missed the issue, forfeited the issue, and didn't raise it at the Rule 12 level, that it can never be raised again, right? Because otherwise, if we permit through the sufficiency argument the ability to inject that issue back in, well, then we're defeating what the limitations are in Rule 12. That's what I understood the argument to be. And my answer to that is no, it's not a major exception to Rule 12. It doesn't defeat Rule 12 at all because it's a relatively limited exception when you're talking about arguing that it's not an offense. So that's for purposes of sufficiency. If you disagree with me and say no, we're not going to extend the sufficiency argument to permit that type of argumentation on appeal, if you disagree with me on that, it's still plain error. And the problem with saying Rule 12 cuts this off is that you have a situation where somebody may well be actually innocent of a crime, and the appellate court is saying, we're doing nothing about it. We can do nothing about it because you missed it on Rule 12. And that is not what Rule 12 is about. And no defense lawyer is going to wait for plain error as a tactical matter to not raise something at Rule 12. It's a forfeiture issue at most. We believe it was preserved, but it's not a waiver. This is not a plea colloquy where somebody says, I know I have the Fifth Amendment, and I'm waiving it. That's not what we're dealing with in terms of waiver, in terms of how to construe Rule 12. I think that's what I have. You're over your time. And I'm way over time. I appreciate your indulgence. Thank you, Your Honor. Thank you. Thank you, Counsel. That concludes argument in this case.